# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 5953 | **DATE** | 12/2/2004 |
| **CASE TITLE** | Marilynn D. Alsdorf vs. Thomas C. Bennigson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Stay [Doc. No. 4-2]; Defendant's Motion to Dismiss [Doc. No. 4-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, Defendant's motion to stay [Doc. No. 4-2] is GRANTED. This case is stayed for 6 months, until 5/2/05. However, the Parties are directed to notify this Court if the California Supreme Court issues a decision in Bennigson's appeal before that court prior to May 2, 2005. In addition, Defendant's motion to dismiss [Doc. No. 4-2] is dismissed without prejudice. This case is set for status on 5/2/05, 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| X | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | DEC 03 2004 date docketed | | |
| | Docketing to mail notices. | | | 15 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| slf(lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARILYNN D. ALSDORF,      )
         )
         )
     **Plaintiff,**      )
         )    No. 04 C 5953
     **v.**      )
THOMAS C. BENNIGSON,      )    HONORABLE DAVID H. COAR
         )
         )
     **Defendant.**      )

F..........

DEC 0 ? 2004

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant Thomas Bennigson's ("Defendant" or "Bennigson") motion to stay the proceedings in this Court, pending final resolution of an appeal currently pending before the California Supreme Court. For the reasons set forth below, Defendant's motion to stay is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Painting: Picasso's *Femme en Blanc*

The current action between the parties arises from a dispute concerning the ownership of "Femme en Blanc," a painting by Pablo Picasso. In 1975, Plaintiff Marilynn Alsdorf, (hereinafter "Plaintiff" or "Mrs. Alsdorf"), along with her late husband, purchased "Femme en Blanc" (the "Painting") from the Stephen Hahn Gallery (the "Hahn Gallery") in New York, New

York. (Alsdorf Decl., ¶ 9). Mrs. Alsdorf and her husband purchased the Painting with the understanding that it had been purchased in Paris, France. Id. Since 1975, with several exceptions, the Painting remained in Mrs. Alsdorf's possession in Chicago, Illinois. (Alsdorf, Decl., ¶ 10).[1]

In January 2002, the Art Loss Register (hereinafter the "ALR")[2] was asked to conduct a search on "Femme en Blanc" by a French art dealer, Didier Imbert ("Imbert"), who was thinking on acquiring the Painting on behalf of a client (Sarah Jackson Decl., ¶ 8).[3] At the time, the Painting was held in the Freeport in Switzerland, having been sent there from the United States. Id. In February 2002, the ALR advised the art dealer that the Painting was illustrated in the Répertoire des Biens Spoliés en France durant la Guerre 1939-1945 (List of Property Removed

---

[1] There were three times when Mrs. Alsdorf allowed the Painting to leave her possession in Chicago. First, from September 20, 2001 through October 28, 2001, Mrs. Alsdorf allowed the Painting to be displayed at the David Tunkl ("Tunkl") fine art gallery in Los Angeles, California. (Alsdorf Decl., ¶ 11). In early 2002, Mrs. Alsdorf allowed Tunkl to ship the Painting to Switzerland in order to attempt to sell it. (Alsdorf Decl., ¶ 13). Finally, during either the spring or summer of 2002, Tunkl arranged for the Painting to be shipped from Switzerland to Los Angeles, California. Some time prior to December 19, 2002, the Painting was shipped back to Chicago, where it remains today. (Alsdorf Decl., ¶¶ 19, 21).

[2] The Art Loss Register, which is based in New York, New York, London, England, and Cologne, Germany, is the world's largest private international database of 150,000 lost and stolen art, antiques and collectives, and provides recovery and search services to collectors, the art trade, insurers and law enforcement through technology and a professionally trained staff of art historians. (Sarah Jackson Decl., ¶ 2). In 1998, the ALR made full time staff and resources available to the task of compiling a searchable database of 1933-1945 cultural spoliation claims. (Id. at ¶ 3). The ALR database lists approximately 20,000 works of art that were looted from both private and museum collections from 1933-1945. (Id. at ¶ 4). Although Holocaust claims comprise the majority of claims, artworks have also been reported missing from state collections in France, Germany, Belgium, Hungary, Russia, Italy, Austria, Poland, Holland and the Ukraine. (Id.).

[3] Sarah Jackson ("Jackson") is the Historic Claims Director of the Art Lost Register in London, England. (Jackson Decl., ¶ 1).

-2-

From France during the War 1939-1945), as a war loss, recorded under the name of Justin Thannhauser ("Thannhauser"). Id. at ¶ 9. This prompted research in the archives to determine the sequence of events on the theft, and to confirm the identity of the original owner, who the ALR believed to be Thannhauser. Id.

Through its research, the ALR discovered that the records of the art dealer, Thannhauser, are retained by the Silva Casa Foundation ("Silva Casa") in Geneva, the charity organized to administer the proceeds from Thannhauser's estate and that of his second wife, Hilde. (Jackson Decl., ¶ 10). The Foundation retains the handwritten diaries of Thannhauser, and photographs from his Paris apartment. Id. A note in his diary mentions that the Painting was "stolen from his Paris house." Id. Also included in the album retained in Geneva is an interior photograph of the Paris apartment showing the Painting in suit, plus a photograph of the painting annotated by Thannhauser on the reverse with "Stolen by the Germans" and "Carlota Landsberg" marked in the upper right corner. (Id.; see also Jackson Decl., Exhibit B). The Silva Casa Foundation also provided a page from a book published in 1927 by Klinhardt & Biermann, showing the Painting, and naming the then owner as Robert Landsberg.[4] After the ALR advised Imbert that the painting was published as a war loss, the ALR insisted that it needed to know the identity of the current owner, in order to facilitate future discussions. (Jackson Decl., ¶ 11). Subsequently, Mrs. Alsdorf identified herself as the owner of the Painting, and confirmed that it had been

_____

[4] The indication that the picture belonged not to Thannhauser, but to Carlota Landsberg, Robert Landsberg's wife, was found in May 2002 in a letter in the Wiedergutmachungsamt (Restitution Office), in Berlin Germany, in a letter from Dr. Otto Weise, dated February 22, 1965, in which he asked that the Painting be struck out of Thannhauser's compensation claim, as it belonged to Carlota Landsberg. (Jackson Decl., ¶ 13). This information coincided with the notation of Carlota Landsberg's name on the photo that had been discovered in Thannhauser's archives. Id.

purchased by her and her late husband, James Alsdorf, from the Stephen Hahn Gallery in New York, New York in 1975, for $375,000. (Id.).

Around the same time that Mrs. Alsdorf's identity was revealed, the Ministére des Affaires Étrangères (the French Foreign Ministry) confirmed to the ALR that according to their files the Painting, while on deposit with Thannhauser, was the property of "Mme de Landzberg [sic]." (Jackson Decl., ¶ 14). The Wiedergutmachungsamt von Berlin agreed to give the ALR the name of the original owner, Carlota Landsberg, and an address in New York. (Jackson Decl., ¶ 15). From this information, the ALR was able to locate Carlota Landsberg's grandson, Tom Bennigson, through the receptionist at the New York apartment building where his grandmother lived, and who remembered his visits. Id. On provision of a power of attorney, the ALR was able to access Carlota Landsberg's compensation file at the Wiedergutmachungsamt von Berlin. Id. The file indicated that in 1969, Carlota Landsberg was paid DM 100,000 for the loss of the picture by actions of the Third Reich, without prejudice to her right to recover the Painting if it was located. Id. Carlota Landsberg's file also revealed correspondence from Thannhauser confirming that the picture had been held in her name and that Thannhauser's apartment had been looted. ( Id. at ¶ 16). The letter states (in English translation):

Dear Mrs. Landsberg,

As I remember very clearly, and as I therefore can confirm to you in writing, in 1938 or 1939 you sent your painting by Picasso, of a woman, from the so-called classical period of the artist, to me in my house in Paris, 35 Mirosmenil. At this time, as we were forced to leave our home in Paris in 1939, your Picasso hung in the middle of a narrow wall. Upon the occupation of Paris in 1940, when we were no longer in Paris and the house was closed, the entire contents of the four-story building—and with it your painting—were stolen. This was confirmed to us by the property manager after the end of the war. Further we heard from porter of the house on the occasion of a later visit certain facts, revealing that during the four

-4-

day long violent German national socialist plundering everything was taken out of the four-story house during the night and placed in trucks.

Your painting is pictured in Christian Zervos' large Picasso work, Volume 4, No. 389, Page 160 with the title "Femme en blanc" 1922, oil painting, 65:54 cm. As you know, I have often tried to find a trace of this oil painting, as well as all of the other property that disappeared at the same time, but until now without success.

In conclusion may I especially state that I have set forth the foregoing to the best of my knowledge and conscience.

(Jackson Decl., ¶ 16). On or about June 7, 2002, Sarah Jackson sent a letter to Bernard, Mrs. Alsdorf's attorney, informing him that the ALR had discovered that Thannhauser had been holding the Painting for another person when it was confiscated by the Nazis. Id. at ¶ 18. Bernard responded with a letter on June 11, 2002, which requested that the ALR remove the Painting from its database, and further stating that if the matter was not resolved, the ALR's actions would be considered "tortious and an interference with my client's lawful right, title and interest in said painting thus creating identified monetary damages to its rightful owner, my client Marilyn [sic] Alsdorf." ( Id. at ¶ 19; see also Jackson Decl., Ex.G.).


### B. Bennigson Files Suit Against Alsdorf and Tunkl in the Superior Court of the State of California for the County of Los Angeles

After Bennigson was identified as the heir to Carlota Landsberg, he retained counsel, E. Randol Schoenberg ("Schoenberg"), with respect to his claims related to the Painting. (Schoenberg Decl., ¶ 3). Bennigson initially attempted to settle his claims with Mrs. Alsdorf; however, those settlement negotiations were unsuccessful. (Id. at ¶¶ 3-5). Consequently, on December 19, 2002, Bennigson filed suit in the Superior Court of the State of California for the

County of Los Angeles ("California Superior Court") against Alsdorf and Tunkl, seeking replevin and injunctive relief. (Id. at ¶ 8). On that same day, Schoenberg also applied for an *ex parte* temporary restraining order to keep the Painting in Los Angeles. Id. However, the presiding judge, Judge David Yaffe ("Judge Yaffe"), directed Schoenberg to provide notice to Mrs. Alsdorf and Tunkl, which Schoeberg subsequently did. Id.

The following day, December 20, 2002, Bernard and Schoenberg appeared before Judge Yaffe on behalf of their respective clients. (Schoenberg Decl., ¶ 9; see also Schoenberg Decl., Ex. 9). Judge Yaffe granted a temporary restraining order, which directed Mrs. Alsdorf and Tunkl to keep the Painting in Los Angeles. ( Id). At the December 20, 2002 hearing however, Bernard informed Judge Yaffe that the Painting had left Los Angeles just a few hours earlier. (Id. at ¶ 10). In order to effect service of process on Mrs. Alsdorf, who was vacationing at the time of the hearing, the parties agreed to modify the temporary restraining order, and allow the Painting to remain in Chicago pending a hearing on the preliminary injunction. (Id. at ¶ 1; see also Schoenberg Decl., Ex. 13). Although Mrs. Alsdorf acknowledged receipt of the summons and complaint, she moved to quash service, as she claimed that the trial court lacked personal jurisdiction over her. (Schoenberg Decl., ¶ 14). Consequently, the preliminary injunction hearing was stayed pending a determination of the motion to quash. (Id). The motion to quash hearing was held before Judge Victor H. Person ("Judge Person") in the Superior Court of the State of California for the County of Los Angeles. (Id. at ¶ 15). While the matter was under advisement, Bennigson filed an additional brief on the motion to quash, a motion to disqualify Judge Person for cause, a motion for leave to amend the complaint, and a motion to conduct jurisdictional discovery. Id. All matters were stayed by Judge Person, pending a determination

of the motion to disqualify, which was denied by Judge David T. McEachen of the Orange County Superior Court on May 9, 2003. Id. In addition, all other pending matters were stayed pending Judge Person's ruling on the motion to quash on June 16, 2003. Id.

On June 16, 2003, Judge Person granted Alsdorf's motion to quash for lack of personal jurisdiction. (Schoenberg Decl., ¶¶ 15-16; see also Schoenberg Decl., Ex. G). In addition, Judge Person denied Bennigson's motion for leave to amend his complaint, and to allow jurisdictional discovery. (Id. at ¶ 16). Further, the preliminary injunction hearing before Judge Yaffe was removed from the court's calendar as moot. Id.

On June 18, 2003, Bennigson appealed Judge Person's grant of Alsdorf's motion to quash, to the California Court of Appeal, Second District ("California Court of Appeal"). (Schoenberg Decl., ¶ 16). On April 15, 2004, the California Court of Appeal issued its decision, which affirmed Judge Person's decision. (Id. at ¶ 17; see also Schoenberg Decl., Ex. H.). Bennigson filed a Petition for Rehearing on April 19, 2004, which was subsequently denied on May 11, 2004. (Schoenberg Decl., ¶ 17). Bennigson filed a Petition for Review on May 17, 2004, and that Petition was granted unanimously by the California Supreme Court on July 28, 2004. The parties have submitted opening briefs and are awaiting the scheduling of oral arguments in the California Supreme Court. (Id. at ¶¶ 18-20).

On September 10, 2004, Mrs. Alsdorf filed a complaint in this Court, in an action for declaratory judgment and to quiet title of the Painting. On October 22, 2004, Bennigson, who is the Defendant in the action before this Court, filed, by special limited appearance, a motion to dismiss or stay Mrs. Alsdorf's complaint filed in this Court. On October 28, 2004, the Court directed the Parties to address only the stay issue. Consequently, Bennigson's motion to stay

-7-

Mrs. Alsdorf's action, pending resolution of Bennigson's appeal before the California Supreme Court, is presently before this Court.[5]

## II. ANALYSIS

### A. Legal Standard for a Motion to Stay

As an initial matter, before addressing the motion to stay, the Court notes that there is some dispute between the Parties concerning the appropriate legal standard for addressing Defendant's motion to stay. Mrs. Alsdorf brings her cause of action pursuant to 28 U.S.C. § 1655 (Lien enforcement; absent defendants) and 28 U.S.C. § 2201 (commonly referred to as "The Declaratory Judgment Act"). Pursuant to the Colorado River doctrine, federal district courts may abstain from the exercise of their jurisdiction in deference to concurrent proceedings in a state court, only in "exceptional circumstances." See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). In addition, the Colorado River court noted, "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. at 817. Further, "only the clearest of justifications" warrants abstention in favor of a concurrent state proceeding. Id. at 818-19. ("[I]t was never a doctrine of equity that a federal court could exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." Id. at 814. (quoting Alabama Pub. Serv. Comm'n v. Southern R. Co., 341 U.S. 341, 361 (1951)). In addition, in accordance with the Colorado River doctrine, the Seventh Circuit has noted that, "the primary duty of the district court is to exercise the jurisdiction vested in it by

---

[5] In addition, on October 6, 2004, the United States Attorney for the Central District of California filed a forfeiture action against the Painting, United States v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso, C.D.Cal. CV 04-8333-FMC (AJWx).

-8-

law; the presumption is against abstention." Sverdrup Corporation v. Edwardsville Community Unit School District No. 7, 125 F.3d 546, 550-51 (7th Cir. 1997) (internal citations and quotations omitted).

While, in general, the Colorado River doctrine is applied in deciding whether to grant a litigant's motion to stay, a different standard is applied in cases brought pursuant to the Declaratory Judgment Act. In Wilton v. Seven Falls Company, 515 U.S. 277, 282, the Supreme Court noted its prior decision in Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, where the Court made, "clear that district courts posses discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." (Wilton, 515 U.S. at 282) (internal citations omitted). Consequently, the Wilton Court held that because of the "nonobligatory nature" of the Declaratory Judgment Act, it is within the sound discretion of the district court to stay or dismiss an action seeking a declaratory judgment. Wilton, 515 U.S. at 288.[6] Consequently, stays granted pursuant to the Declaratory Judgment Act are not subject to the "exceptional circumstances" standard of the Colorado River doctrine.

Defendant Bennigson urges that because Mrs. Alsdorf's action asserts a claim for declaratory judgment, the more permissive standard of Wilton should be applied to Mrs. Alsdorf's cause of action. The Court notes, however, that Mrs. Alsdorf has brought her claim

---

[6] A number of Seventh Circuit cases have also addressed the district's court's discretion in entertaining actions for declaratory judgment. See e.g., Sverdrup Corp. v. Edwardsville Community Unit Sch. Dist. No. 7, 125 F.3d 546, 548, n.5 (noting the district court's "traditional discretion to abstain from rendering a declaratory judgment."); see also Rogers v. Desiderio, 58 F.3d 299, 302 (noting the discretionary nature of stays in declaratory judgment actions).

pursuant to two distinct statutory provisions: First, Mrs. Alsdorf brings an action for declaratory judgment pursuant to 28 U.S.C. § 2201. Second, Mrs. Alsdorf brings a cause of action pursuant to 28 U.S.C. § 1655. Consequently, the Court will analyze Plaintiff's claim pursuant to the more stringent Colorado River standard. If the Court determines that it cannot grant a stay pursuant to the Colorado River standard, it will analyze whether a stay should be granted pursuant to the more permissive Wilton standard.

### B. Analysis of the Colorado River Doctrine Factors

In order to determine whether abstention is warranted pursuant to the Colorado River doctrine, the court must engage two-step inquiry. United States Bank Nat'l Ass'n v. EMC-Lincolnshire, LLC, No. 03 C 4692, 2003 U.S. Dist. LEXIS 15098, *10 (N.D. Ill. 2003). First, the Court must determine whether the federal and non-federal proceedings are parallel. Id. (citing Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 898 (7th Cir. 1999); AAR Int'l, Inc. v. Nimelias Enters. S.A., 250 F.3d 510, 518 (7th Cir. 2001). This first step is a threshold inquiry, "if actions are not parallel, the Colorado River doctrine does not apply and the inquiry comes to an end." EMC-Lincolnshire, LLC, 2003 U.S. Dist. LEXIS 15098 at *10 (internal citations omitted). Second, the court must balance, "a host of judicially prescribed factors." Id. In the Seventh Circuit, those factors include: (1) whether the state has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the presence or absence of concurrent jurisdiction (6) the source of governing law, state or federal; (7) the adequacy of the state court action to protect the federal plaintiff's rights; (8) the relative progress of state and federal proceedings; (9) the availability of removal; and (10) the

-10-

vexatious or contrived nature of the federal claim.  Caminiti and Iatarola, Limited v. Behnke

Warehousing, Inc., 962 F.2d 698, 701 (7th Cir. 1992) (quoting LaDuke v. Burlington N.R.R.,

879 F.2d 1556, 1559 (7th Cir. 1989)).

### C. Are the State and Federal Court Actions Parallel?

Initially, the Court must determine whether the California State Court action and this

federal action are parallel.  A suit is deemed parallel, "when substantially the same parties are

contemporaneously litigating substantially the same issues in another forum, thus making it

likely that judgment in one suit will have a res judicata effect in the other suit."  Calvert Fire

Insurance Company v. American Mutual Reinsurance Company, 600 F.2d 1228, 1229, n.1 (7th

Cir. 1979).  A federal court may exercise jurisdiction notwithstanding parallel proceedings in

state court in order to protect the rights of the federal plaintiff.  Finova, 180 F.3d at 899.

Further, in order to be deemed "parallel suits," it is not necessary that the suit be identical.  AAR

International, Inc. v. Niemelias Enterprises S.A., 250 F.3d 510, 518 (7th Cir. 2001).  "[T]he

presence or absence of additional parties or issues in one of the cases will not necessarily

preclude a finding that they are parallel." Id. (internal citations omitted).   "The question is not

whether the suits are formally symmetrical, but whether there is a 'substantial likelihood' that the

[state] litigation 'will dispose of all claims presented in the federal case.'" Id. (citing Day Union

Mines Inc., 862 F.2d 652, 656 (7th Cir. 1998) (quoting Lumen Construction, Inc. v. Brant

Construction Co., Inc., 780 F.2d 691, 695 (7th Cir. 1985)).   As noted, while the California

action includes an additional party, Tunkl,  neither party appears to dispute the fact that both the

California state action and the federal action before this Court seek to address the same issue, the

ownership rights to the Painting.[7]  Consequently, the Court can proceed to the second step of the Colorado River doctrine, and balance the ten factors, in order to determine whether a stay should be issued.

### D. Factors to Be Balanced Pursuant to the Colorado River Doctrine

As previously noted, when deciding whether to grant a party's request for a stay, the Court must determine: (1) whether the state has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the presence or absence of concurrent jurisdiction; (6) the source of governing law, state or federal; (7) the adequacy of the state court action to protect the federal plaintiff's rights; (8) the relative progress of state and federal proceedings; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. Caminiti and Iatarola, Limited v. Behnke Warehousing, Inc., 962 F.2d 698, 701 (7th Cir. 1992) (quoting LaDuke v. Burlington N.R.R., 879 F.2d 1556, 1559 (7th Cir. 1989)). Although these factors must be considered in ruling on Defendant's motion to stay, these factors need not be applied mechanically, but rather, the Court must carefully balance all of the factors most important to the circumstances of this case. See Illinois Bell Tel. Co. v. Illinois Commerce Commission, 740 F.2d 566, 570 (7th Cir. 1984) (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983)).   However, the final balance of these factors should be "heavily weighted in favor of jurisdiction." Mattson v. Gerry Baby Products Co., No. 95 C 2314, 1996 U.S. Dist. LEXIS 3867, *12 (citing Moses H. Cone, 460 U.S.

---

[7] Further, a party's absence from proceedings does not preclude the court from "finding that the parties in the two proceedings are substantially the same." Eisenmann Corporation v. Tek-Mor, Inc., No 03 C 4375, 2004 U.S. Dist. LEXIS 1517, *11 (N.D. Ill. 2004).

at 15-16). The Court will now analyze the ten factors in order to determine the outcome of Bennigson's motion to stay.

### *1. Has the State Assumed Jurisdiction Over the Property?*

Mrs. Alsdorf contends that the California state court never assumed jurisdiction over the Painting, yet this Court has jurisdiction over the Painting pursuant to 28 U.S.C. § 1655 ("Section 1655"). Section 1655 confers in rem jurisdiction on the federal court, and directs the district court, "to enforce any lien or claim to, or to remove any incumbrance of lien or cloud upon the title to, real or personal property within the district." G. P. Credit Co., L.L.C. v. Orlando Residence, Ltd., 349 F.3d 976, 978 (7th Cir. 2000). Section 1655, "allows a district court to order a defendant who cannot be served within the state in which the federal court sits and will not appear voluntarily to appear and plead. Id." However, Section 1655 merely allows the district court to enforce the rights as to the *res*, or property; it does not confer personal jurisdiction upon a person not amenable to service under the traditional constitutional limitations. Id. at 979. Consequently, assuming, *arguendo*, that this Court has jurisdiction over the *res*, the Painting, it has yet to be determined whether this Court can exercise personal jurisdiction over Bennigson. Plaintiff contends that because *in rem* jurisdiction attaches "upon the filing of the bill of complaint in court," see Penn General Casualty Co. v. Commonwealth of Pennsylvania, 294 U.S. 189, 196 (1935), jurisdiction over the Painting was vested in this Court when Mrs. Alsdorf filed her action pursuant to § 1655 in this Court on September 10, 2004. Consequently, Mrs. Alsdorf argues, this Court was the first to exercise jurisdiction over the Painting, and because it was the first court to exercise jurisdiction over the Painting, it exercised that jurisdiction to the exclusion of all other courts. See e.g., United States v. One 1985 Cadillac

Seville, 866 F.2d 1142, 1145 (9th Cir. 1989). However, Plaintiff's argument disregards the fact that the California Supreme Court has yet to determine whether California courts have personal jurisdiction over Mrs. Alsdorf. Based upon the California Supreme Court's ruling, there may be a determination that when Bennigson filed his Complaint in California state court on December 19, 2002, the California Superior Court could exercise personal jurisdiction over Mrs. Alsdorf. Consequently, until the California Supreme Court issues its final determination on whether the California State Court can exercise personal jurisdiction on Mrs. Alsdorf, this Court cannot agree with Plaintiff's argument that this Court must exercise jurisdiction over the *res*, the Painting, to the exclusion of all other Courts.

### 2. The Inconvenience of the Federal Forum

Plaintiff contends that considerations of convenience overwhelmingly favor resolution of the dispute between the parties in Illinois. Mrs. Alsdorf contends that at seventy-nine years old, it would be incredibly burdensome for her to travel to California and to transport the Painting, which is also located in Chicago, in order to litigate the issue of ownership. Not surprisingly, Bennigson contends that it would be burdensome for him to travel to Illinois to litigate this action, when California is his home state.[8] The Court recognizes that Alsdorf's age may make travel more burdensome for her to California than for Bennigson to Illinois. However, the Court

---

[8] In her brief filed in opposition to Defendant's motion to stay, Plaintiff contends that at the time the ALR contacted Bennigson, Defendant was attending law school in California, Plaintiff believes that presently, Bennigson is practicing law in New York. (See Pl.'s Opp'n to Def. Mot. to Stay, p. 13). However, in his October 19, 2004 Declaration submitted to this Court, Bennigson avers that he is a resident of Oakland, California. (See Bennigon Decl. ¶ 1). Without more information than Plaintiff's unsupported assertion that Bennigson now resides in New York, for purposes of this Opinion, the Court assumes that Bennigson's declaration is true and correct, and that he continues to reside in Oakland, California.

-14-

also assumes that for most routine appearances in California State Court, Mrs. Alsdorf's actual presence in California State Court would be unnecessary. Consequently, it is unlikely that Mrs. Alsdorf would be required to engage in extensive back and forth travel between Illinois and California for the California State Court proceedings.

### 3. The Desirability of Avoiding Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. . ." Day v. Union Mines, Inc., 862 F.2d 652, 659 (7th Cir. 1998) (quoting Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1998)). Plaintiff urges that because there has been no litigation in California State Court other than Bennigson's appeal from the decision granting Mrs. Alsdorf's motion to quash, there will be no piecemeal litigation if this Court refuses to stay Mrs. Alsdorf's suit in this Court, because there has been no substantive activity to duplicate. To no surprise, Bennigson argues that in fact, there will be piecemeal litigation if this Court does not grant his motion to stay, thereby resulting in simultaneous litigation on the ownership of the Painting.

Although there are no present California State trial court proceedings involving Mrs. Alsdorf, there are still proceedings in California State trial court involving Bennigson and Tunkl, the art dealer. In fact, because Tunkl is still a party in the California State action, discovery has continued in the California litigation. (See Schoenberg Decl., ¶ 21). In addition, Bennigson and Tunkl have completed substantial written discovery, including several sets of interrogatories, requests for admissions and the production of hundreds of pages of documents. Id. In addition, the depositions of Bennigson, Tunkl, Michelle Burt, Tunkl's assistant, and Barry Jacobson, the

-15-

art mover, were all completed in July 2004. (Id. at ¶ 22). In addition, the deposition of Mrs.

Alsdorf, as a third party witness, was taken on August 20, 2004. (Id. at ¶23). No trial date has

been set, however, as the parties are awaiting the outcome of the California Supreme Court

decision. (Id. at ¶ 24). Consequently, if Alsdorf's case before this Court is allowed to proceed

without the benefit of the California Supreme Court decision, there is a substantial likelihood of

piecemeal litigation, which would surely complicate a matter already sufficiently complex.

> ### 4. The Order in Which Jurisdiction Was Obtained by the Concurrent Forums &
> ### 5. The Presence or Absence of Concurrent Jurisdiction

This factor incorporates elements already discussed by the Court in the first factor,

whether the state has assumed jurisdiction over the property. Further, whether jurisdiction can be

properly exercised over Mrs. Alsdorf is clearly in dispute in California. Conversely, as previously

noted, Bennigson is contesting this Court's ability to exercise personal jurisdiction over him.

Therefore, because jurisdiction will most likely be in dispute at least until the California Supreme

Court issues an opinion on Bennigson's appeal, this factor weighs neither in favor nor against the

issuance of a stay.

> ### 6. Is the Source of Governing Law State or Federal?

In her brief filed in opposition to Defendant's motion to stay, Mrs. Alsdorf contends that

her claims are based on French and United States federal law. (See Pl. Opp'n to Def. Mtn. to

Stay, pp. 11-12). Although Mrs. Alsdorf's assertion may in fact be correct, it appears that the

Court that eventually reaches the merits of the Parties' dispute will need to determine the proper

choice of law. From the Parties' initial submissions to this Court, it appears that there are a

plethora of choices for the choice of law, including France, Germany United States Federal Law,

and/or the state laws of Illinois, New York or California. Consequently, it is too early for this

Court to speculate on the laws that will or should be used to adjudicate the Parties' claims.

Therefore, this factor weighs neither in favor nor against the issuance of stay.

### 7. *The Adequacy of the State Court Action to Protect the Federal Plaintiff's Rights & 8. The Relative Progress of the State and Federal Proceedings*

Mrs. Alsdorf contends that there has been no progress in the California action against

her, as there has been no action other than Bennigson's appeals. Further, Plaintiff argues that

although the California Supreme Court accepted review of the jurisdictional issue on July 28,

2004, a significant amount of time may pass before the California Supreme issues a decision on

Bennigson's appeal, thereby compromising her rights to clear title on the Painting. Conversely,

Defendants contend that the jurisdictional issue should be resolved by the California Supreme

Court in the near future, and if Bennigson prevails, the matter will proceed to trial, thereby

resolving the issue of ownership as between all Parties involved.

In support of her position, Plaintiff cites a First Circuit case, Elmendorf Graffica, Inc. v.

D.S. America, Inc., 48 F.3d 46 (1st Cir. 1995). In Elmendorf, Screen, an Illinois corporation,

sued Elmendorf, a Puerto Rico corporation, in the Circuit Court of Cook Court of Cook, County,

Illinois, in order to collect the balance on an agreement to purchase computer software and

hardware that the parties had entered into. Id. at 48. Screen's suit was dismissed for lack of

personal jurisdiction, and Screen appealed. Id. Meanwhile, Elmendorf filed an action in federal

court in Puerto Rico, in order to seek, among other relief, a declaration that its agreement with

Screen was null and void. Id. at 48-49. While its appeal was pending in Illinois, Screen moved

-17-

to stay the federal action, pursuant to the <u>Colorado River</u> doctrine. <u>Id.</u> at 49. The federal district court granted the motion to stay; however the First Circuit reversed and vacated the stay. <u>Id.</u> at 53. As Mrs. Alsdorf notes, the <u>Elmendorf</u> court held:

> In our view, the magistrate judge did not give appropriate attention to the fact that, at the time that the issue of a stay was before the district court (indeed, up until now), the Illinois action consisted of nothing more than a pending appeal from the order of the Cook County Circuit Court dismissing the action for lack of personal jurisdiction. This was not a case where the parallel state action was strongly underway, making it perhaps reasonable, depending on the facts, to await the outcome in the state case before proceeding in the federal court. Here, if the Cook County Circuit Court's dismissal for lack of personal jurisdiction should be affirmed by the Illinois appellate court, there will be left in existence no state action whatever; while if the lower court's dismissal for lack of personal jurisdiction should be reversed on appeal, the parties will merely be back at the very beginning of the process of litigating the merits of their controversy. Under such circumstances, the federal diversity action in Puerto Rico, which was not encumbered by any threshold jurisdictional question, was the more immediately available vehicle for litigating the dispute.

<u>Id.</u> at 51.

Consequently, Mrs. Alsdorf contends, pursuant to the doctrine set forth in <u>Elmendorf</u>, because of the jurisdictional question presently before the California State Courts, no significant progress has been made in that litigation. It is undisputed that Bennigson's California State Court action was filed in December of 2002, nearly two years prior to Alsdorf filing her action in this Court in September 2004. However, Plaintiff is correct in her assertion that, "the Supreme Court has cautioned that we should not look merely to the dates on which the two actions were filed, but instead should act in a 'pragmatic, flexible manner with a view to the realities of the case at hand.'" <u>Illinois Bel. Tel. Co. v. Illinois Commerce Commission</u>, 740 F.2d 566, 570 (7th Cir.

1984) (quoting Moses H. Cone, 460 U.S. at 21)). However, there are several ways in which the First Circuit's decision in Elmendorf is significantly different from the Parties' dispute in this case. As an initial matter, as noted by this Court in its discussion of the desirability of avoiding piecemeal litigation, the discovery process in Bennigson's action against Tunkl has made significant process. Consequently, if the California Supreme Court does reverse the dismissal of Bennigson's action against Mrs. Alsdorf in California State Court for lack of personal jurisdictional, the Parties will not be at the very beginning of litigating their dispute on the merits, because much of the discovery that is relevant to Tunkl is also relevant to Mrs. Alsdorf.

In addition, contrary to the federal forum in Elmendorf, this federal court is not a forum free of the parties' jurisdictional disputes. As previously noted, Bennigson, through his briefs filed with this Court, has disputed this Court's ability to exercise personal jurisdiction over him. Consequently, it is highly likely that even if this Court were to deny Defendant's motion to stay proceedings in this Court, the parties would commence a jurisdictional battle quite similar to the one presently before the California State Courts. As such, it is likely that if proceedings commence in this Court, there will likely be significant litigation on the jurisdictional issues before the Court may even have an opportunity, depending on outcome of that jurisdictional litigation, to reach the merits of the parties' claims. Consequently, this Court determines that the proceedings in California State Court are more advanced than the action before this Court. Consequently, this factor weighs in favor of granting a stay.


### 9. The Availability of Removal

-19-

As Plaintiff Mrs. Alsdorf correctly notes, because Bennigson, a California resident, named Tunkl, another California resident, as a Defendant in the California State Action, Mrs. Alsdorf is not able to remove the California State Court action to federal court, because there is not complete diversity of citizenship. Consequently, this factor weighs against granting a stay.

### 10. The Vexatious or Contrived Nature of the Federal Claim

Although Defendant Bennigson contends that the timing of Mrs. Alsdorf's suit, which was not filed until after the California Supreme Court decided to review the decision granting Mrs. Alsdorf's motion to quash, could make her suit considered contrived, this Court does recognize that Mrs. Alsdorf does have an actual suit. Although the timing of the filing of her suit in this Court is somewhat dubious, this does not automatically lead to a finding that the federal claim is vexatious or contrived.

### E. Weight of Factors Supports Granting a Stay

After examining all factors relevant in determining whether to issue a stay, it seems clear that the factors weigh in favor in granting a temporary stay. As an initial matter, the Court notes that it does not take lightly its duty to exercise jurisdiction in cases that are properly before it. However, the Court also does not take lightly the importance of resolving the jurisdictional issues surrounding this case. While the Court understands the parties' desire to resolve their dispute in an expeditious manner, principles of comity dictate that this Court respect the fact that the California Supreme Court is currently engaging in review of the decisions of the California Superior Court and Court of Appeal. In addition, substantial discovery has already occurred in

the California State Courts, due to Bennigson's pending action against Tunkl. Consequently, if the California State Court does decide that California has personal jurisdiction over Mrs. Alsdorf, the Parties will be sufficiently advanced in their litigation as not to prejudice the rights of any party. Also, a jurisdictional dispute is just as likely in this Court as it was in the California State Courts. Therefore, a temporary stay will not cause undue delay to the Parties' ability to reach the merits of their dispute.

Finally, the Court notes that it does not intend this case to be stayed indefinitely. Consequently, the Court will stay proceedings for six months. The Court is confident that the California Supreme Court is aware of the concurrent litigation concerning the Painting "Femme en Blanc," and that the California Supreme Court will expeditiously address Bennigson's appeal. However, it is in the interests of all parties involved to allow the California Supreme Court an opportunity to issue a decision concerning the jurisdictional dispute, prior to this Court issuing any substantive opinion in this matter.[9]

---

[9] Because the Court has determined that it can grant Defendant's stay pursuant to the Colorado River doctrine, it need not address whether a stay should be issued pursuant to the more discretionary Wilton standard.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to stay is GRANTED.  This case is stayed for six months, until May 2, 2005.  However, the Parties are directed to notify this Court if the California Supreme Court issues a decision in Bennigson's appeal before that court prior to May 2, 2005.


Enter:

David H. Coar

United States District Judge

Dated: December 2, 2004